UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCY HARPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF MERCED, et al.,<br><br>　　　　Defendants. | 1:18-cv-00562 LJO SKO<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION**<br><br>(ECF NOS. 38 & 39) |

## I. <u>INTRODUCTION</u>

This case concerns the alleged use of excessive force against and failure to reasonably accommodate Plaintiff Darcy Harper ("Plaintiff") on June 6, 2014 during the course of his arrest. Plaintiff brought this action pursuant to 42 U.S.C. § 1983 in April 2018 against the arresting officer, Merced Police Officer Nathaniel McKinnon ("Officer McKinnon"), the City of Merced (the "City"), and the County of Merced (the "County"). The Court, on November 8, 2018, granted Defendants' motion to dismiss all claims against the County and the *Monell* claim against the City. ECF No. 22. Even though Plaintiff was afforded leave to amend his Complaint, he declined to do so. As a result, the Court dismissed the County from this case with prejudice, ECF No. 25, and the *Monell* claim against the City is no longer valid.

Before the Court for decision are the remaining parties' cross Motions for Summary Judgment. Defendants City and Officer McKinnon (collectively, "Defendants") move for summary judgment on the remaining two claims: the first claim, brought under § 1983, is based on Officer McKinnon's alleged

excessive use of force; the second claim is based on the alleged failure to reasonably accommodate Plaintiff's mental disabilities during the arrest, as required by the Americans with Disabilities Act ("ADA"). ECF No. 38. In addition, Plaintiff seeks partial summary judgment on his § 1983 claim. ECF No. 39. The matters were taken under submission on the papers pursuant to Local Rule 230(g). ECF No. 44. For the reasons set forth below, the Court GRANTS Defendants' Motion and DENIES Plaintiff's Motion. The Court will consider Defendants' Motion first.

## II. STATEMENT OF FACTS

Using the parties' Statements of Undisputed Facts ("SUFs"), the Court will only recount undisputed material facts regarding Plaintiff's arrest. The parties have also submitted duplicative body worn camera recordings from Officer McKinnon of the incident to supplement the SUFs, which the Court has viewed and construes in light most favorable to Plaintiff as the Court is considering Defendants' Motion first. ECF Nos. 38-9, 43 ("Officer McKinnon's Body Worn Camera" or "BWC"). Before dawn at 4:15 a.m. on June 6, 2014, Merced Police Officers Brown and McKinnon responded to a call regarding Plaintiff as an "escaped 5150 with a weapon." ECF No. 45, SUF ¶ 1. The code references California Welfare & Institution Code section 5150, which applies "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled," and "upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Welf. & Inst. Code § 5150. The officers had been told also that Plaintiff had "[swung] a stick at (hospital) staff." ECF No. 45, SUF ¶ 2.

Officer McKinnon's Body Worn Camera was turned on when Officer McKinnon was approaching a stadium on the campus of University of California, Merced. *Id.*, SUF ¶ 3; BWC at 0:01-:35. About three minutes after his BWC was turned on, Officer McKinnon located Plaintiff hiding behind the bushes on a hill slope by the stadium. ECF No. 45, SUF ¶¶ 3, 5. Upon noticing Plaintiff,

2

Officer McKinnon commanded him twice to "get on the ground," but Plaintiff instead rolled down the hill slope away from the officer. *Id.*, SUF ¶ 2; BWC at 3:12-3:16. Officer McKinnon in turn chased Plaintiff downhill using the stadium stairs. BWC at 3:24-3:16. When Officer McKinnon spotted Plaintiff near the bottom of the hill, he ordered Plaintiff again to "stay down." *Id.* at 3:48-52. Plaintiff again ignored the command. ECF No. 45, SUF ¶ 7. As a result, Officer McKinnon ran towards Plaintiff for about six seconds; when he was close enough to do so, he deployed his taser in dart mode against Plaintiff. BWC at 3:51-58. Officer McKinnon did not specifically warn Plaintiff that he would be tased. *Id.*

The taser, however, failed, and Plaintiff again fled. ECF No. 45, SUF ¶ 8. Officer McKinnon again pursued Plaintiff by climbing over a retaining wall and dashing uphill. BWC at 4:03-4:15. Closing in on Plaintiff, Officer McKinnon again commanded Plaintiff to "get on the ground,"[1] then tased Plaintiff in dart mode the second time. *Id.* at 4:14-18; ECF No. 45, SUF ¶ 7. Walking closer to Plaintiff while holding his taser and flashlight, Officer McKinnon commanded Plaintiff again in rapid succession: "stay down, stay down, do you understand me?" BWC at 4:19-22. Officer McKinnon was now a few feet away from Plaintiff, and as he was calling in for help from other officers, Officer McKinnon commanded Plaintiff again to "stay down, don't move, arms down, arms down." *Id.* at 4:24-38. Despite the repeated commands, Plaintiff began to remove the taser probes from his chest and pushed himself up as though he was trying to get up on his feet. *Id.* at 4:38-45. Out of cartridges to tase Plaintiff in dart mode, Officer McKinnon moved closer and got on top of Plaintiff to apply a drive stun with the taser as Officer McKinnon was commanding Plaintiff to "stop fighting." ECF No. 45,

---

[1] Plaintiff contends that Officer McKinnon did not command him to get on the ground before he was tased the second time. ECF No. 42, Plaintiff's SUF ¶ 8. Construing the BWC in light most favorable to Plaintiff, the Court finds, however, that Officer McKinnon undisputedly commanded Plaintiff to get on the ground before Plaintiff was tased the second time. BWC at 4:13-18.

SUF ¶ 10; BWC at 4:44-52. Officer McKinnon stopped using his taser, but he and Plaintiff now began to tussle. BWC at 4:53-5:01. To prevent Plaintiff from gaining control of the taser, Officer McKinnon delivered a knee strike to Plaintiff's head. ECF No. 45, SUF ¶ 12. After the strike, both parties rolled downhill; by the time Officer McKinnon stopped rolling, he was incapacitated by a serious ankle injury. *Id.*, SUF ¶ 13. Plaintiff was soon after taken into custody by the other newly arrived officers. *Id.*, SUF ¶ 14.

### III. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One principle purpose of "the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

"When the moving party has carried its burden under [Rule 56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* 586-87 (citations omitted). "To survive a motion for summary judgment, a nonmoving party must present 'evidence from which a reasonable jury could return a verdict in its favor.'" *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019) (citations omitted). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citation omitted). "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or

contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 628-29 (9th Cir. 2018) (citation omitted).

Material facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted).

## IV. ANALYSIS

The Court will begin first with the procedural issue presented by Plaintiff then the substance of Defendants' Motion.

### A. Plaintiff's Objection to Defendants' Evidence

In his Opposition, Plaintiff objects to Defendants' references to Exhibits 2 (Officer McKinnon's deposition transcript) and 3 (Plaintiff's deposition transcript) in their SUF. ECF No. 42 at 13. As Plaintiff rightly asserts, "when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court *may* in its discretion exclude the evidence." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002) (emphasis added). Although the Court *may* exclude the evidence, it need not do so. The Court declines to sustain Plaintiff's objection as this ruling does not rest on Exhibits 2 and 3—rather, it rests on facts to which Plaintiff has admitted as undisputed and the BWC—and because the deposition transcripts are only a few pages long. Defense counsel, however, are strongly advised to attend to his obligation to properly reference his evidence.

### B. Fourth Amendment Right Unreasonable Seizure Claim (1st Claim)

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). "The purpose of § 1983 is to deter state actors

5

from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted). Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

In moving for a judgment of dismissal of this case, Defendants assert Officer McKinnon's qualified immunity as a defense to the first cause of action. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The broad scope and the speed with which quality immunity must be dispensed make the doctrine incredibly strong.

### 1. <u>Qualified Immunity</u>

"If an officer's use of force was 'premised on a reasonable belief that such force was lawful,' the officer will be granted immunity from suit, notwithstanding the fact excessive force was deployed." *Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010) (citations omitted). "[O]fficers are entitled to qualified immunity under § 1983 *unless* (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (emphasis added) (citation omitted). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan*, 572 U.S. at 656 (citation omitted). The Court exercises its discretion to consider the "clearly established" prong first.

#### a. <u>Whether the Unlawfulness of Officer McKinnon's Conduct was Clearly Established at the Time</u>

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted). "The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.' It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *Wesby*, 138 S. Ct. at 589-90 (internal quotation marks and citations omitted).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This requires a high 'degree of specificity.' We have repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.' A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id.* at 590 (internal quotation marks and citations omitted).

"Because the moving defendant bears the burden of proof on the issue of qualified immunity, he or she must produce sufficient evidence to require the plaintiff to go beyond his or her pleadings. The defendant's burden is to demonstrate the absence of a genuine issue of material fact." *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

7

### (1) **Whether *Deorle* Clearly Established that Officer McKinnon's Conduct Was Unlawful**

The parties disagree over whether *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), clearly established Officer McKinnon's conduct as unlawful at the time of the arrest: Plaintiff claims that it does, to which Defendants dispute. ECF No. 38 at 12; ECF No. 42 at 12. As the Supreme Court summarized and instructed lower courts on *Deorle*:

> As for *Deorle*, this Court has *already* instructed the Court of Appeals *not* to read its decision in that case too broadly in deciding whether a new set of facts is governed by clearly established law. *Deorle* involved a police officer who shot an unarmed man in the face, without warning, even though the officer had a clear line of retreat; there were no bystanders nearby; the man had been "physically compliant and generally followed all the officers' instructions"; and he had been under police observation for roughly 40 minutes.

*Kisela*, 138 S. Ct. at 1154 (emphasis added) (citations omitted). In accordance with the Supreme Court, the Court finds *Deorle* to be insufficiently specific and analogous to the instant action. Whereas "Deorle had complied with the police officers' instructions, had discarded his potential weapons whenever asked to do so," *Deorle*, 272 F.3d at 1285, and had been observed by the police for "thirty to forty minutes," *id.* at 1276, Plaintiff here was an "escaped 5150," someone who was in involuntary psychiatric custody because he was "a danger to others[] or to himself." Cal. Welf. & Inst. Code § 5150. This was made obvious to Officer McKinnon because he knew Plaintiff had "[swung] a stick at (hospital) staff." ECF No. 45, SUF ¶ 2. When Plaintiff engaged with Officer McKinnon, he resisted arrest, albeit passively, by running away from the officer and repeatedly disregarded Officer McKinnon's orders to "get on the ground," "get down," "stay down, don't move, arms down, arms down." *Id.*, SUF ¶¶ 2, 7-8; BWC at 3:12-3:16, 4:19-38. Thus, when viewing *Deorle* in the correct "high degree of specificity," the revelation is that *Deorle* is markedly distinguishable and inapplicable

8

to the current circumstance. *Wesby*, 138 S. Ct. at 590.

With *Deorle* indisposed, the Court must now turn to other cases prior to June 6, 2014 (the date of the incident) to determine whether it was "settled law" that the first two times when the taser was used in dart mode against Plaintiff and knee strike to Plaintiff's head were unlawful at the time. *Id.* at 589. In analyzing the forces used by Officer McKinnon, the Court is cognizant that the "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use *some degree of physical coercion* or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added). In other words, the fact that Officer McKinnon used some degree of physical coercion to effectuate Plaintiff's arrest was not unlawful.

### (2) **Whether Officer McKinnon's Use of His Taser Was Clearly Unlawful**

Plaintiff argues that Officer McKinnon's use of his taser was unlawful because "[Plaintiff] had not been warned before force was used." ECF No. 42 at 12. Plaintiff relies on *Bryan*, 630 F.3d 805, for the proposition that in the early 2010s it was clearly established that "significant use of force to arrest non-resisting individual without any warning was excessive." *Id.* While *Bryan* is the most analogous § 1983 case concerning the use of a taser prior to June 6, 2014,[2] the Court disagrees with Plaintiff's reading of *Bryan*. How Plaintiff defines "clearly established law" under *Bryan* is too general and inconsistent with Supreme Court's precedents. In an *en banc* decision in *Bryan*, the Ninth Circuit clearly established this specific law: "Officer Brian MacPherson used excessive force when, on July 24, 2005, he deployed his X26 taser in dart mode to apprehend Carl Bryan for a seatbelt infraction, where Bryan was obviously and noticeably unarmed, made no threatening statements or gestures, did *not* resist arrest or attempt to flee, but was standing *inert* twenty to twenty-five feet away from the officer."

---

[2] The parties point to no other cases more analogous than *Bryan*.

9

*Id.* at 809 (emphasis added).

In comparison to the instant case, *Bryan* is plainly distinguishable in many important ways. Whereas the plaintiff in *Bryan* was stopped for a non-violent, seatbelt infraction, Officer McKinnon was responding to a 5150 escaped (Plaintiff), which necessarily meant that Officer McKinnon was informed that Plaintiff was a danger to himself or others because of Plaintiff's mental disorders. In addition, Officer McKinnon was specifically informed that Plaintiff had swung a stick at hospital staff. Further, during the encounter between the officer and plaintiff in *Bryan*, the plaintiff was "standing inert twenty to twenty-five feet away from the officer." *Id.* By contrast, Plaintiff here twice disregarded Officer McKinnon's orders to "get on the ground" and was fleeing before the taser was first discharged. Although Officer McKinnon did not specifically warn Plaintiff that he would discharge his taser, it cannot be said that Plaintiff had no warning whatsoever or that Plaintiff had a legal basis to disregard Officer McKinnon's commands to stop.

After the first discharge failed, Plaintiff again fled,[3] prompting another chase by Officer McKinnon.[4] As Officer McKinnon got closer to Plaintiff the second time around, Officer McKinnon again commanded Plaintiff to "get on the ground" before successfully tasing him in dart mode the second time. Given these critical factual distinctions, the Court cannot say that *Bryan* clearly

---

[3] In the first SUF, Plaintiff appears to argue that he did not flee *after* the first taser was discharged but provides no evidence to support his assertion. ECF 38-1, SUF ¶ 8. Having reviewed the BWC and construing it in light most favorable to Plaintiff, the Court finds that it is undisputed that Plaintiff was fleeing between the period when Officer McKinnon first discharged his taser and the second discharge. BWC at 3:56-4:15. In his Opposition, Plaintiff appears to specify that he is only disputing that Officer McKinnon had told him to "stay down" before he was tased the second time. ECF No. 42, Plaintiff's SUF ¶ 8.

[4] When Plaintiff was asked at deposition, "Did it ever occur to you to stop running following those two Taser uses?", he answered, "No." ECF No 45-3, Exh. 7 24:16-19.

10

established beyond debate that Officer McKinnon's double (or triple[5]) deployments of his taser against Plaintiff were unlawful.

Plaintiff also relies on *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), but does not analyze how *Blankenhorn* compels the Court to deny Officer McKinnon qualified immunity. ECF No. 42 at 12. *Blankenhorn* is even more dissimilar to the instant case than *Bryan*. Most significantly, *Blankenhorn* does not involve the use of a taser.[6] The plaintiff in *Blankenhorn* complied with a stop conducted by the police officers and was answering the officers' questions before physical force was applied against him, whereas Plaintiff here did neither before he was tased. *Blankenhorn*, 485 F.3d at

---

[5] After the second discharge of the taser, Officer McKinnon commanded Plaintiff twice to "stay down, stay down, do you understand me?" and "stay down, don't move, arms down, arms down." BWC at 4:19-38. Plaintiff disregarded these commands and began removing the taser probes from his chest and trying to stand up. *Id.* at 4:38-45. As a result, Officer McKinnon tased Plaintiff the third time, but this time using the taser in drive-stun mode (instead of in dart mode) because his taser had run out of cartridges. Plaintiff does not contend that it was clearly established at the time that the third taser deployment was unlawful in his Opposition. ECF No. 42 at 12. It seems Plaintiff has conceded that the third deployment of the taser was lawful.

Even if the Court assumes Plaintiff takes the position that the third taser deployment was lawful, *Bryan* does not support this proposition. Whereas Plaintiff was tased the first two times because he was fleeing and disregarding Officer McKinnon's orders to stay down, when Plaintiff was tased the third time, he was not only disregarding Officer McKinnon's orders to stay down (again) and put his hands up, he removed the taser probes from his chest, and began to stand up. If *Bryan* does not clearly establish that the first and second taser deployments were unlawful, and there is no caselaw establishing such proposition, then the same must certainly extend to the third taser deployment where the circumstances are even more distinguishable from *Bryan*.

[6] *Blankenhorn* came about before *Bryan*, and in *Bryan*, the Ninth Circuit held for the first time that, despite the use of excessive, "a reasonable officer in Officer MacPherson's position could have made a reasonable mistake of law regarding the constitutionality of the *taser use* in the circumstances Officer MacPherson confronted in July 2005. Accordingly, Officer MacPherson is entitled to qualified immunity." *Bryan*, 630 F.3d at 833 (emphasis added).

11

478. Thus, *Blankenhorn* is inapplicable here.

For the stated reasons, the Court finds that at the time of Plaintiff's arrest, it was not clearly established that the two times (or three times[7]) Officer McKinnon tased Plaintiff were unlawful when Plaintiff was known to be an escaped 5150, who was potentially dangerous to himself and others; Officer McKinnon had information indicating Plaintiff had swung a stick at a person during his escape from the hospital; and Plaintiff was fleeing from Officer McKinnon without any legal basis despite being commanded to stop multiple times. Neither party has presented any other caselaw for the Court to consider; the Court is unaware of any applicable caselaw despite its research.

### (3) **Whether Officer McKinnon's Knee Strike Was Clearly Unlawful**

The parties also dispute whether it was clearly established that Officer McKinnon's knee strike to Plaintiff's head[8] under the circumstances was unlawful at the time. ECF No. 38 at 8, 11; ECF No. 42 at 11-12. Defendants contend that there is no caselaw establishing that Officer McKinnon's knee strike was unlawful. ECF No. 38 at 11. Relying on *Blankenhorn*, however, Plaintiff argues that qualify immunity should be denied as to the knee strike. ECF No. 42 at 12. The Court again finds *Blankenhorn* to be distinguishable.

The Court begins with the relevant facts of that case. In *Blankenhorn*, one of the officers said: he punched Blankenhorn several times during the arrest because he "was trying to get Mr. Blankenhorn's arms out from underneath him and secure the handcuffs." [The officer] further

---

[7] *See supra* note 5.

[8] At times in his Opposition, Plaintiff confusingly suggests that there was a second strike to his chest. ECF No. 42 at 4, 12. In his SUF, however, Plaintiff admits that there was only a knee strike to his head. ECF No. 42, Plaintiff's SUF ¶ 12. Plaintiff presents no evidence to establish a second knee strike to his chest, nor is there any such evidence from Defendants. It is unclear to the Court whether Plaintiff made a typo. Regardless, the Court need not and cannot delve into the merits of a non-existing second knee strike to Plaintiff's chest when there is no evidence showing the circumstances leading up to it.

12

testified that such punches are "utilized at times to distract an individual so that his muscles relax momentarily and then you are able to take control." But Blankenhorn claims he never pinned his arms underneath his body. (The video does not clearly show whether he did so or not.) *Blankenhorn*, 485 F.3d at 480.

Because the matter was at the summary-judgment stage, the Ninth Circuit concluded that there was a genuine dispute of material fact based on the evidence and that a rational jury, therefore, "could find that if Blankenhorn did not maneuver his arms beneath his body it eliminated the need for any use of force to release them, and thus that [the officer's] punches were not reasonably justified by the circumstances as [the officer] claims." *Id.* Although the officer's punch in *Blankenhorn* is not exactly the same as Officer McKinnon's knee strike, they are, as the Supreme Court put it, "materially similar" to justify analogizing them for purposes of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But that is where the similarity begins and ends.

In opposition, Plaintiff contends that the knee strike was clearly unlawful because he was "on ground, no longer running, and not resisting in any manner." ECF No. 42 at 12. Unlike *Blankenhorn*, Plaintiff presents no evidence to support these facts. Importantly, the undisputed facts refute Plaintiff's position. Leading up the knee strike, Officer McKinnon was commanding Plaintiff to "stay down, stay down, do you understand me?" and "stay down, don't move, arms down, arms down" while Plaintiff was on the ground after he was tased the second time. BWC at 4:19-38. Instead of following these commands and stop resisting, Plaintiff removed the taser probes from his chest and began standing up. *Id.* at 4:38-45. In response, Officer McKinnon tased Plaintiff in drive-stun mode while commanding him to "stop fighting." ECF No. 45, SUF ¶ 10; BWC at 4:44-52. To prevent Plaintiff from gaining control of the taser, Officer McKinnon struck Plaintiff's in the head with his knee. ECF No. 42, Plaintiff's SUF ¶ 12. Whereas the plaintiff in *Blankenhorn* presented evidence to contradict the officer's justification for punching him multiple times, the undisputed facts here disconfirm Plaintiff's position that the single knee strike was unjustified. *Blankenhorn*, therefore, does not clearly establish

13

beyond debate that Officer McKinnon's knee strike to Plaintiff's head was unlawful.

In light of the reasons stated, the Court cannot say there is a genuine dispute that Officer McKinnon was "plainly incompetent or [ ] knowingly violate[d] the law" in effectuating Plaintiff's arrest. *Ashcroft*, 563 U.S. at 743. Consistent with the policy to resolve "[qualified] immunity questions at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 232, the Court finds that Officer McKinnon is entitled to qualified immunity because existing law did not place "the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 138 S. Ct. at 589. The Court thus need not address the other arguments raised by the parties concerning the first claim.

C. **Plaintiffs' Cross-Motion for Summary Judgment**

The Court has determined above that Defendants' motion for summary judgment, which requires the Court to view the evidence in a light most favorable to Plaintiff, must be GRANTED and that Defendants are entitled to qualified immunity with respect to the § 1983 claim. Plaintiff's cross-motion as to the § 1983 claim requires the Court to view the evidence in a light most favorable to Defendants. Given that the same evidentiary record is at issue, Plaintiff cannot possibly prevail on his cross motion because Defendants have interposed a valid qualified immunity defense. Applying the authorities set forth above to the same facts viewed in the light most favorable to Defendants produces the same result: Defendants are entitled to qualified immunity. Whether the Court treats Plaintiff's motion as moot because the Defendants are entitled to judgment on their motion or simply evaluates Plaintiff's cross-motion on its own merit, Plaintiff's motion must be DENIED.

D. **ADA Claim (2nd Claim)**

Title II of the ADA commands that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II imposes upon public entities a 'duty to accommodate' disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) (citation omitted). The Ninth Circuit has held that

"Title II applies to arrests." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).

Defendants may be liable under Title II for failure to provide reasonable accommodation, "where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* (citation omitted). To establish such claim, Plaintiff "generally must show: (1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of [his] disability. In a Title II claim grounded in a public entity's alleged failure to provide a reasonable accommodation under 28 C.F.R. § 35.130(b)(7), the plaintiff bears the initial burden of producing evidence of the existence of a reasonable accommodation. A public entity may defeat a reasonable accommodation claim by showing 'that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Id.* at 1232–33 (citations omitted).

Plaintiff's theory is that Defendants failed to afford him reasonable accommodation by not "having a mental health specialist come to the scene and talk the Plaintiff down so that he could be taken into custody without having to harm him"; and because of this failure, Plaintiff suffered "greater physical injuries in the process than other people arrested under identical circumstances who are not disabled." ECF No. 1 (Complaint) ¶¶ 48, 50. Based on the undisputed facts, the Court finds that Plaintiff was not denied the benefit of reasonable accommodation during the course of his arrest because of his disability. Officer McKinnon's conduct was a legitimate, non-discriminatory response to Plaintiff' disregarding repeated and continuous commands to "stay down," fleeing, and him resisting arrest. In light of

Plaintiff's recalcitrant behaviors, the Court agrees with Defendants' contention that even if a mental health specialist is called, the specialist would not have been able to come close enough to help Plaintiff and may endanger himself or herself given Plaintiff's psychiatric history. ECF No. 38 at 13. Indeed, the undisputed facts are that Plaintiff had fled from where he was receiving psychiatric treatment and "[swung] a stick at (hospital) staff." ECF No. 45, JSUF ¶ 2. Taking these undisputed facts together, the Court finds that Defendants have met their initial burden of showing that no reasonable jury could return a verdict in Plaintiff's favor on the second claim.

The burden is now shifted to Plaintiff to establish a genuine dispute and not "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. That is, Plaintiff must present contrary evidence to show how Officer McKinnon could have called a mental health specialist to assist with the arrest while Plaintiff was fleeing, disregarding orders to stop, and resisting arrest, and how doing so would have been an appropriate reasonable accommodation. Plaintiff, however, fails to present any such evidence. Accordingly, Defendants are entitled to judgment as a matter of law on the second claim.

## V. **CONCLUSION AND ORDER**

For the reasons set forth above, Defendants' Motion for Summary Judgment as to the entire action is GRANTED. It follows that Plaintiff's Motion for Partial Summary Judgment is DENIED. The Clerk of Court is directed to enter judgment in favor of Officer McKinnon and the City of Merced and against Plaintiff, and to CLOSE THIS CASE. The trial date of March 24, 2020, and all other deadlines, are hereby VACATED.

IT IS SO ORDERED.

Dated: **January 16, 2020**            /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE